## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **WILLIAM BUCK RODGERS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-CV-0060-CVE-FHM** |
| | ) | |
| **SCOTT CROW, Director** | ) | |
| | ) | |
| **Respondent.**[1] | ) | |

## <u>OPINION AND ORDER</u>

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 3), filed

by petitioner William Buck Rodgers, a state inmate appearing through counsel. Respondent filed

a response (Dkt. # 12) in opposition to the petition, and petitioner filed a reply (Dkt. # 17). Both

parties provided state court records necessary for adjudication of petitioner's claims. <u>See</u> Dkt. ##

3, 12, 13, 14. For the reasons that follow, the Court denies the petition.

## I.      Background

Petitioner seeks federal habeas relief from the judgment and sentence entered against him in

the District Court of Creek County (Sapulpa Division), Case No. CF-2012-396. Dkt. # 3, at 11.[2]

In that case, a jury convicted petitioner of first-degree murder, in violation of OKLA. STAT. tit. 21,

§ 701.7(A) (2011), and recommended a sentence of life with the possibility of parole. Dkt. # 12-4,

<u>Rodgers v. State</u>, No. F-2014-427 (Okla. Crim. App., Aug. 18,  2015) (unpublished) (hereafter,

---

[1]     Pursuant to FED. R. CIV. P. 25(d), the Court substitutes Scott Crow, Director of the Oklahoma
Department of Corrections (ODOC), in place of Joe Allbaugh, the ODOC's former director,
as party respondent. The Clerk of Court shall note this substitution on the record.

[2]     For consistency, the Court's citations refer to the CM/ECF header pagination.

"OCCA Op."), at 1. At trial, the State presented evidence establishing that petitioner shot and killed his neighbor, Robert Travis, around 1:30 a.m. on September 23, 2012, after the two argued about a loud party at Travis's house. See Dkt. # 13-3, Tr. Trial vol. 2, 23-end; Dkt. # 13-4, Tr. Trial vol. 3, 13-82. The State's evidence included witnesses who saw and heard petitioner and his girlfriend, Taryn Morgan, arguing with Travis before the shooting, law enforcement officers who investigated the shooting, testimony from Sheriff John Davis regarding bullet trajectory, and a videotape of Detective Les Ruhman interviewing petitioner after the shooting. See Dkt. # 13-3, Tr. Trial vol. 2, 23-end; Dkt. # 13-4, Tr. Trial vol. 3, 13-82.

The evidence presented at trial established that petitioner walked across the street to Travis's yard before the shooting and asked Travis to keep the noise down. Dkt. # 13-3, Tr. Trial vol. 2, at 37-46, 72-79, 145-46; Dkt. # 13-4, Tr. Trial vol. 3, at 16-17. Travis and Morgan then sat on the steps of their porch to smoke cigarettes. Dkt. # 13-4, Tr. Trial vol. 3, at 16-17. When the noise continued, Morgan walked across the street and exchanged words with Travis. Id.; Dkt. # 13-3, Tr. Trial vol. 2, at 72-79. After Morgan returned home, she and petitioner sat on the steps of their porch and continued to argue back and forth with Travis and his friend, Jose Garcia Venegas. Dkt. # 13-3, Tr. Trial vol. 2, at 37-48; Dkt. # 13-4, Tr. Trial vol. 3, at 17. At some point, petitioner asked Morgan to retrieve his pistol from their bedroom. Dkt. # 14, State's Exhibit # 16 (DVD of petitioner's interview), at 12:15, 21:45. Morgan handed the pistol to petitioner who placed it on an end table just inside the front door. Id. at 13:15, 22:45. Morgan yelled across the street, "We can still hear you." Id. at 13:30, 22:45; Dkt. # 13-3, Tr. Trial vol. 2, at 80-81, 147. Petitioner went inside and returned to the porch with his pistol. Dkt. # 14, State's Exhibit # 16, at 22:45. Travis, who was unarmed, approached petitioner and Morgan, and Morgan stepped down off the porch to confront him. Dkt.

# 13-3, Tr. Trial vol. 2, at 47-48, 65-67, 80-81, 104; Dkt. # 13-4, Tr. Trial vol. 3, at 27-28. Petitioner, who remained on the porch, stood up, aimed his pistol at Travis's chest, and shot him. Dkt. # 13-4, Tr. Trial vol. 3, at 65. Garcia Venegas and Travis's girlfriend, Carol Tate, both testified that Travis was just standing in petitioner's driveway when petitioner shot him. Dkt. # 13-3, Tr. Trial vol. 2, at 46-47, 65-67,71, 80-81, 104. After the shooting, petitioner told Deputy Matthew Greco-Lucchina that he shot Travis because "he felt Taryn's life was in danger." Dkt. # 13-4, Tr. Trial vol. 3, at 17. Travis fell where he was shot and died in petitioner's driveway. Dkt. # 13-3, Tr. Trial vol. 2, at 46-47, 219-20. Law enforcement officers testified that Travis's feet were anywhere from four feet to 30 feet from petitioner's porch steps. Dkt. # 13-3, Tr. Trial vol. 2, at 176, 195-96, 214. Greco-Lucchina, who took measurements of the crime scene, testified that Travis's feet were 16 and one half feet from the third porch step. Dkt. # 13-4, Tr. Trial vol. 3, at 27.

Based on his investigation and review of the medical examiner's report, Sheriff John Davis opined that Travis "would have had to have been turning for the round to strike him where it did," and testified that the wound and bullet path was consistent with petitioner being in an "elevated" position from Travis but was not consistent with petitioner's statement to Detective Les Ruhman that Travis was "barreling towards" Morgan and petitioner when petitioner shot Travis. Dkt. # 13-4, Tr. Trial vol. 3, at 53-54. On cross-examination, defense counsel elicited testimony from Davis indicating that Davis had only 40 to 60 hours of training in bullet trajectory investigation, that he did not write a report on his findings and conclusions, that he had never been asked to offer expert testimony on bullet trajectory and that he could not rule out that Travis may have been turned and leaning forward when he was shot. Id. at 72-78.

After the State rested, defense counsel moved for a directed verdict, arguing that the evidence clearly demonstrated that petitioner shot Travis in self-defense. Dkt. # 13-4, Tr. Trial vol. 3, at 82-84. The trial court denied the motion. Id. at 84. Defense counsel then asserted that petitioner should be immune from prosecution under OKLA. STAT. tit. 21, § 1289.25(D), a provision of Oklahoma's "Stand Your Ground" law. Id. at 84-87. When petitioner shot and killed Travis, Oklahoma's "Stand Your Ground" law, OKLA. STAT. tit. 21, § 1289.25 (hereafter, "§ 1289.25"), provided, in relevant part:

. . .

D. A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

. . .

F. A person who uses force, as permitted pursuant to the provisions of subsections B and D of this section, is justified in using such force and is immune from criminal prosecution and civil action for the use of such force. As used in this subsection, the term "criminal prosecution" includes charging or prosecuting the defendant.

. . .

OKLA. STAT. tit. 21, § 1289.25 (2011). The trial court concluded that § 1289.25 is not an "absolute immunity statute" but instead "is essentially a defense that has been recognized in the [Oklahoma] Uniform Jury Instructions for criminal matters." Id. at 87. The trial court characterized petitioner's assertion of immunity as a motion to "dismiss or direct the verdict" based on § 1289.25 and overruled the motion, noting that outstanding fact questions precluded the court from finding petitioner immune from prosecution as a matter of law. Id. Trial counsel then presented testimony

from two witnesses: (1) Dr. Kendall Little, who testified that petitioner had compression injuries in his spine that slightly increased his risk for bone fractures, and (2) petitioner's father, John Rodgers, who testified that he and petitioner moved furniture on the day before the shooting and that petitioner seemed to be having a good day. Dkt. # 13-4, Tr. Trial vol. 3, at 89-118. Petitioner did not testify, and trial counsel did not call Morgan as a witness even though Morgan was standing near petitioner when he shot Travis. Id. Over the State's objection, the trial court gave the following jury instruction:

> A person has no duty to retreat and has the right to stand his ground and meet force with force, including deadly force, if he is not engaged in an unlawful activity and is attacked in any place where he has a right to be, if he reasonably believes it is necessary to do so to prevent death or great bodily harm to himself.

Dkt. # 13-8, Orig. Rec., at 205 (Instruction No. 34, based on Okla. Unif. Jury Instr. (OUJI)-CR 8-15A); see also Dkt. # 13-5, Tr. Trial vol. 4, at 5 (noting that instruction on § 1289.25(D) would be given over State's objection). The trial court also instructed the jury on petitioner's theory of self-defense. Dkt. # 13-8, Orig. Rec., at 206-12. Trial counsel carefully discussed these instructions with the jury during closing arguments and argued that the evidence demonstrated that the shooting was justified because (1) he acted in self-defense and (2) he had no duty to retreat after Travis refused to leave petitioner's property and allegedly charged at petitioner and Morgan. See Dkt. # 13-4, Tr. Trial vol. 3, at 13-17, 72-78; Dkt. # 13-5, Tr. Trial vol. 4, at 5, 33-48. By returning a guilty verdict, the jury necessarily rejected petitioner's defenses. Dkt. # 13-5, Tr. Trial vol. 4, at 58. On May 1, 2014, the trial court adopted the jury's sentencing recommendation and imposed a sentence of life with the possibility of parole. Dkt. # 13-7, at 1, 9-10.

Represented by counsel, petitioner timely filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA), claiming (1) he was immune from prosecution under Oklahoma's "Stand Your Ground" law, OKLA. STAT. tit. 21, § 1289.25 (hereafter, "§ 1289.25"), (2) the trial court should have sustained his motion for a directed verdict because the evidence demonstrated he acted in self-defense, (3) the trial court should have admonished the jury to disregard an irrelevant and prejudicial statement made by Carol Topaum, a state witness, (4) the State violated his Sixth Amendment right to confrontation by failing to call at trial Les Ruhman, a former detective who testified at the preliminary hearing, (5) the trial court abused its discretion in allowing the State to introduce improper expert testimony regarding bullet trajectory through Sheriff John Davis, (6) the trial court failed to give a jury instruction on exculpatory statements, (7) the trial court failed to give a complete jury instruction on § 1289.25(D), (8) trial counsel denied him his Sixth Amendment right to effective assistance by (1) advising him to reject a plea offer and proceed to trial, (b) failing to perform independent expert testing to determine the distance between petitioner and Travis at the time of the shooting, (c) failing to timely assert petitioner's immunity under § 1289.25, (d) failing to employ an expert to corroborate petitioner's version of events, (e) failing to call Morgan as a witness, and (f) failing to adequately present petitioner's theory of self-defense, (9) the cumulative effect of trial errors deprived him of a fair trial, and (10) "there was insufficient evidence to find that the [petitioner] was not acting under the protection of the [§ 1289.25] defense or acting in self-defense as a matter of law." Dkt. # 3, at 12-13; Dkt. # 12-4, OCCA Op., at 1-2. In an unpublished summary opinion, filed August 18, 2015, the OCCA rejected each claim on the merits and affirmed petitioner's judgment and sentence. Dkt. # 12-4, OCCA Op., at 2-6. Petitioner filed a petition for

rehearing, and the OCCA denied it. Dkt. # 12-6, at 1. Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. Dkt. # 3, at 13.

In July 2016, petitioner filed an application for postconviction relief in the state district court, raising two issues. Dkt. # 12-5. First, he claimed he "was deprived of his Due Process rights by the ex post facto application of" the OCCA's judicial decision on direct appeal which petitioner argued "mandated [the] procedure for raising immunity from prosecution under [§ 1289.25], by adopting [a] procedure predicated on the law of a sister state." Dkt. # 3, at 14; Dkt. # 12-5, at 3-6. Second, he claimed trial counsel was ineffective for failing to timely assert immunity under § 1289.25 in accordance with the new procedure adopted by the OCCA after petitioner's trial. Dkt. # 3, at 14; Dkt. # 12-5, at 6-7. The state district court rejected both claims and denied his application for postconviction relief. Dkt. # 12-6. Petitioner timely filed a postconviction appeal, and the OCCA affirmed the denial of postconviction relief. Dkt. # 12-8, Rodgers v. State, No. PC-2016-922 (Okla. Crim. App., Jan. 12, 2017) (unpublished) (hereafter, "OCCA PC Order").

Represented by counsel, petitioner filed the instant federal habeas petition on February 7, 2017. Dkt. # 3, at 1. He  identifies three grounds for relief:

I.      [Petitioner] is actually innocent of the crime of first degree murder because he is statutorily immune under 21 Oklahoma Statutes 1289.25. The Oklahoma Court of Criminal Appeals violated [his] constitutional due process rights by denying relief regarding his immunity. The OCCA made an unreasonable determination of fact regarding the application of the procedure for 21 O.S. 1289.25 and rendered a decision that unreasonably applied and was contrary to clearly established federal law regarding ex post facto judicial determinations.

II.     [Petitioner] is entitled to a new trial because he was deprived of his Sixth Amendment constitutional right to effective assistance of trial counsel and the OCCA made an unreasonable determination of fact in light of the evidence

before it and rendered a decision that unreasonably applied and was contrary to clearly established federal law in rejecting this claim.

III.     [Petitioner] was deprived of his Sixth and Fourteenth Amendment constitutional rights to a fair trial.

Dkt. # 3, at 34, 51, 73 (bold-face type and full capitalization omitted).

## II.     Legal framework

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's authority to grant federal habeas relief in three significant ways.  First, a federal court may grant habeas relief to a prisoner in custody pursuant to a state-court judgment "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); see also Wilson v. Corcoran, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").  Second, a federal court may grant habeas relief only if the prisoner has either (1) exhausted available state-court remedies, 28 U.S.C. § 2254(b)(1)(A), or (2) demonstrated a complete absence of available state remedies or an absence of effective state remedies, § 2254(b)(1)(B).  Third, a federal court may grant habeas relief on a federal claim that was adjudicated on the merits in state court only if the prisoner makes a threshold showing that the state court's decision either (1) "was contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), (2) "involved an unreasonable application of clearly established Federal law," id., or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding," id. § 2254(d)(2).[3]  In addition, the procedural default doctrine imposes a fourth limitation:  a federal court may grant habeas relief on "federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule"—only if the prisoner demonstrates either cause for the procedural default and resulting prejudice or that failure to review the claim will result in a fundamental miscarriage of justice.  Davila v. Davis, 137 S. Ct. 2058, 2064-65 (2017); Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Even if a state prisoner presents a timely habeas petition, asserts only properly exhausted federal claims, and either satisfies § 2254(d)'s standards or makes the showings necessary to overcome the procedural default of his federal claims, the prisoner is not necessarily entitled to federal habeas relief.  Rather, the prisoner is merely entitled to de novo review of his federal claims. See Cuesta-Rodriguez v. Carpenter, 916 F.3d 885, 898 (10th Cir. 2019) ("Claims that the state court didn't adjudicate on the merits, we review de novo."); Milton v. Miller, 744 F.3d 660, 670-71 (10th Cir. 2014) (explaining that satisfaction of § 2254(d)'s standards "effectively removes AEDPA's prohibition on the issuance of a writ" and "requires [a federal habeas court] to review de novo" petitioner's claims).  And, even if the federal court finds a constitutional error on de novo review, the court "must assess [its] prejudicial impact . . . under the 'substantial and injurious effect' standard set forth in Brecht [v. Abrahamson, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness."  Fry v. Pliler, 551 U.S. 112, 121-22

---

[3]  As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (quoting Terry Williams v. Taylor, 529 U.S. 362, 412 (2000)).

(2007).  Under the Brecht standard, a federal court will grant habeas relief only if the court "is in grave doubt as to the harmlessness of an error that affects substantial rights."  O'Neal v. McAninch, 513 U.S. 432, 445 (1995).

## III.    Discussion

Respondent concedes that the petition is timely and that petitioner exhausted available state remedies as to all but one part of his ground two claim.  Dkt. # 12, at 2.  Respondent nevertheless contends that petitioner is not entitled to federal habeas relief because some parts of his ground one and ground three claims allege only errors of state law and § 2254(d) bars relief on petitioner's federal claims that were adjudicated on the merits in state court.  Id.

### A.    Ground one: "actual innocence," statutory immunity, and due process

In ground one, petitioner contends (1) he is actually innocent of first degree murder because he deserves immunity from prosecution under § 1289.25, (2) the trial court incorrectly denied his request for immunity under § 1289.25, and (3) the OCCA violated his right to due process and the prohibition against ex post facto judicial determinations when it adopted a new procedure for asserting immunity under § 1289.25 after his trial and applied that procedure to conclude on direct appeal that he waived his right to assert immunity by failing to assert it before trial in accordance with the newly-adopted procedure.  Dkt. # 3, at 40-50.[4]

---

[4]    At the end of his arguments in support of ground one, petitioner briefly asserts that trial counsel was ineffective for failing to assert statutory immunity before trial.  Dkt. # 3, at 50. The Court will address this assertion when it analyzes the ineffective-assistance-of-counsel claim petitioner raises in ground two.

### 1.     Statutory immunity under § 1289.25

As relevant to his ground one claim, petitioner raised three claims on direct appeal related to his alleged immunity under § 1289.25.  First, he  asked the OCCA "to determine, based on the facts of his case," that he was immune from prosecution under § 1289.25(D).  Dkt. # 12-1, at 12-16.  Second, he asserted that the trial court erred in overruling his motion for a directed verdict because the trial court incorrectly concluded that § 1289.25 does not provide "absolute immunity."  Id. at 16-18.  Third, he claimed that the evidence was insufficient to support a finding that his actions were not protected under § 1289.25 or that he was not acting in self-defense.  Id. at 36-38.

The OCCA rejected all three claims.  As to the first, the OCCA reasoned that

> a person who uses force as permitted by sections 1289.25(B) & (D) is immune from prosecution.  If, however, a defendant believes he or she is entitled immunity under section 1289.25, the claim of immunity must be asserted before trial opens or a dispositive plea is entered. [Petitioner] waited too long to claim immunity and the matter is waived.  See State v. Jones, 298 Kan. 324, 329-334, 311 P.3d 1125, 1130-1133 (Kan. 2013).

Dkt. # 12-4, OCCA Op., at 2.  As to the second, the OCCA relied on state law to conclude that petitioner "waived his right to appeal the trial court's ruling on his demurrer by presenting evidence after the State rested its case."  Id. at 3 (citing Hancock v. State, 155 P.3d 796, 811 (Okla. Crim. App. 2007) and Young v. State, 12 P.3d 20, 35 (Okla. Crim. App. 2000)).  As to the third, the OCCA concluded:

> The evidence presented at trial was sufficient for a rational juror to conclude beyond a reasonable doubt that [petitioner] did not act under the protections of the Stand Your Ground law or in self-defense when he shot and killed Travis.  The evidence was sufficient for any rational trier of fact to find beyond a reasonable doubt that [petitioner] committed the crime of First Degree Murder.

Dkt. # 12-4, OCCA Op., at 6 (citing Logsdon v. State, 231 P.3d 1156, 1161 (Okla. Crim. App. 2010) and Spuehler v. State, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985)).

Petitioner's ground one claim appears to challenge the OCCA's decision as to all three of these claims. However, to the extent petitioner argues he is entitled to federal habeas relief (1) because he is entitled to immunity under § 1289.25, (2) because the trial court or the OCCA erred in interpreting and applying § 1289.25, or (3) because he is "actually innocent" of first-degree murder, none of these issues presents a cognizable habeas claim. See McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief on a freestanding claim of actual innocence."); Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 71 (2009) (noting cognizability of "federal constitutional right to be released upon proof of 'actual innocence'" remains "an open question"); Leatherwood v. Allbaugh, 861 F.3d 1034, 1043 (10th Cir. 2017) ("Federal habeas relief is not available to correct state law errors."); Eizember v. Trammell, 803 F.3d 1129, 1145 (10th Cir. 2015) (noting that a federal court's "role on collateral review isn't to second-guess state courts about the application of their own laws but to vindicate federal rights."). As a result, the Court denies habeas relief as to this portion of ground one.

### 2. Due process violation from ex post facto judicial determination

The only part of ground one that asserts a cognizable habeas claim is petitioner's claim that the OCCA violated his Fourteenth Amendment due process rights through ex post facto judicial decision making. Dkt. # 3, at 44-50. Petitioner argues that the OCCA deprived him of the "substantial protection" of immunity under § 1289.25 when it relied on a Kansas Supreme Court

decision to adopt a new procedure for asserting immunity and then determined that petitioner waived immunity by failing to assert it before trial, in accordance with the new procedure. Id. at 47-50.

Petitioner first raised this claim in his application for post-conviction relief. Dkt. # 12-5, at 3-4. The state district court denied relief, finding that ex post facto principles were not implicated because the OCCA's ruling involved a "procedural pronouncement only" and did not create a "substantive change in punishment or an available defense." Dkt. # 12-6, at 4-5. On postconviction appeal, petitioner challenged the state district court's ruling, asserting that,

> [a]t the time of trial, no guidance existed for trial counsel to definitively know the proper procedure for raising immunity. When issues regarding immunity were brought to the Court of Criminal Appeals' attention, the Court determined that proper procedures were not followed. In doing so, the Court of Criminal Appeals deprived [p]etitioner's due process rights by ex post facto application of Court mandated procedure for raising immunity from prosecution under 21 O.S. § 1289.25[F]. Specifically, the Court of Criminal [A]ppeals, by adopting [a] new procedure predicated on the law of a sister state, deprived [p]etitioner of his entitlement to effectively raise the question of immunity under § 1289.25.

Dkt. #12-7, at 11-12. Petitioner further argued that after briefing was complete on his direct appeal, but before the OCCA rendered its decision, the OCCA issued an unpublished decision in State v. Ramos, Nos. S-2013-509, S-2013-510 (Okla. Crim. App. 2015), wherein the OCCA "established the proper procedure for raising immunity under Oklahoma's Stand Your Ground statute" and made it applicable to future cases. Dkt. # 12-7, at 13-14. Petitioner noted that in Ramos, as in his case, the OCCA relied on the Jones decision to find that immunity had to be raised before trial. Id. Petitioner argued that "[t]rial counsel could not have predicted how Kansas law would control criminal procedure in Oklahoma, and therefore, the [p]etitioner was deprived of his substantial due process right to raise entitlement to potential immunity from prosecution." Id. at 15.

The OCCA rejected petitioner's claim, agreeing with the state district court that "there were no ex post facto implications in [petitioner's] case" and reasoning that the "decision in Ramos did not create any substantive change in punishment nor did it eliminate an available defense." Dkt. # 12-8, OCCA PC Order, at 3. The OCCA further stated:

> We reject [petitioner's] claim that he was denied due process because this Court's decision in Ramos was decided after his cause was submitted for review. There was nothing preventing [petitioner] from asserting the immunity from prosecution claim prior to trial, as [the state district judge] noted, nor was there anything preventing appellate counsel from presenting the argument for this Court's consideration as to the proper procedure for asserting the immunity from prosecution claim. [Petitioner] asserted the stand your ground defense at trial and it was rejected by the jury. On direct appeal, this Court addressed and rejected all three of [petitioner's] claims based upon the stand your ground defense. Nothing in the record supports [petitioner's] claim that he was denied due process.

Dkt. # 12-8, OCCA PC Order, at 4.

Respondent contends that petitioner is not entitled to relief on his due process/ex post facto claim because the OCCA's adjudication of that claim "is not contrary to, or an unreasonable application of, Supreme Court law nor did it result in a mistaken view of the facts in light of the State court record." Dkt. # 12, at 15-18. The Court agrees.

"Article I, Section 10, Clause 1 of the United States Constitution prohibits states from passing any 'ex post facto Law.'" Bland v. Sirmons, 459 F.3d 999, 1017 (10th Cir. 2006). "An ex post facto law is any law that, among other things, 'deprives one charged with crime of any defense available according to law at the time when the act was committed.'" Id. (quoting Beazell v. Ohio, 269 U.S. 167, 169-70 (1925)). Petitioner is correct that, in some cases, judicial decision making can implicate the constitutional prohibition against ex post facto laws and result in a due process violation. Dkt. # 3, at 46-47.

> Although "[t]he Ex Post Facto Clause is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government," the Supreme Court has recognized that "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process."

Sallahdin v. Gibson, 275 F.3d 1211, 1228 (10th Cir. 2002) (internal citations omitted) (first quoting

Marks v. United States, 430 U.S. 188, 191 (1997); then quoting Rogers v. Tennessee, 532 U.S. 451,

456 (2001)). But contrary to petitioner's position, no due process violation occurred here.

Admittedly, the OCCA's language in its summary opinion, stating that petitioner "waited too long

to claim immunity and the matter is waived," Dkt. # 12-4, at 2, is confusing at best and a

misstatement of the record at worst. Regardless, it is clear from the record that the OCCA's ruling

on direct appeal did not deprive petitioner of an available defense. Neither the OCCA's decision in

Ramos that established a new procedure for "future cases," nor its decision in petitioner's case that

he "waived" immunity prevented petitioner from asserting an immunity defense at trial. As the

OCCA reasoned, petitioner did, in fact, assert an immunity defense at trial, and the trial court

instructed the jury as to that defense. Thus, on the record presented, the Court cannot say that the

OCCA's adjudication of petitioner's due process claim, on postconviction appeal, resulted in a

decision that was contrary to, or an unreasonable application of, Supreme Court precedent or that

was based on an unreasonable determination of the facts. Accordingly, the Court also denies relief

as to this portion of petitioner's ground one claim.

### B. Ground two: ineffective assistance of trial counsel

In ground two, petitioner claims he was denied his Sixth Amendment right to the effective

assistance of counsel because trial counsel performed deficiently in several respects and, but for

counsel's deficient performance, there is a reasonable probability that the outcome of trial would

have been different. Dkt. # 3, at 51, 60-72. Petitioner specifically alleges that trial counsel performed deficiently by (1) failing to raise immunity under § 1289.25 before trial, (2) failing to request a complete jury instruction based on § 1289.25(D), (3) failing to seek or have performed any expert testing regarding bullet trajectory to corroborate petitioner's version of events, (4) failing to call an expert witness to rebut the expert testimony of Sheriff John Davis regarding bullet trajectory, (5) failing to present an adequate defense, (6) refusing to call Taryn Morgan as a witness, and (7) encouraging petitioner to reject plea offers and proceed to trial. Dkt. # 3, at 50, 61-72.

Petitioner presented most of these allegations to support the ineffective-assistance-of-counsel claim he raised on direct appeal,[5] and the OCCA rejected that claim. Applying <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the OCCA determined that petitioner failed to demonstrate "a reasonable probability that but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." Dkt. # 12-4, OCCA Op., at 4-5. In addition, the OCCA denied his request for an evidentiary hearing on his Sixth Amendment claim, stating,

> This Court will order an evidentiary hearing if "the application and affidavits . . . contain sufficient information to show this Court by clear and convincing evidence [that] there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11(B)(3)(b)(i), <u>Rules of the Oklahoma Court of Criminal Appeals</u>, Title 22, Ch. 18, App. (2015). Having reviewed [petitioner's] request for an evidentiary hearing to develop this claim and the materials offered to support that request, we find that he has failed to meet his burden. Rule 3.11, <u>Rules of the Oklahoma Court of Criminal Appeals</u>, Title 22, Ch. 18, App. (2015).

Dkt. # 12-4, OCCA Op., at 5.

---

[5]     As respondent contends, petitioner did not raise in state court the allegation that trial counsel failed to request a proper jury instruction relating to his immunity defense. Dkt. # 12, at 2, 29. As further discussed below, the Court finds that allegation lacks merit.

In his application for postconviction relief, petitioner alleged trial counsel was ineffective for failing to assert immunity under § 1289.25 before trial, in accordance with the procedure the OCCA established in <u>Ramos</u>, nearly one year after petitioner's trial. Dkt. # 12-5, at 6-7. Significantly, petitioner acknowledged that "it was impossible for trial counsel to know the proper procedure" for asserting immunity because that procedure was not established until the OCCA issued its decision in <u>Ramos</u>. <u>Id.</u> Petitioner further alleged that this new allegation was properly asserted in an application for postconviction relief because appellate counsel could not have included this allegation as part of the ineffective-assistance-of-counsel claim that was raised on direct appeal. <u>Id.</u> at 7. The state district court found this claim was barred because it was not raised on direct appeal. Dkt. # 12-6, at 5. Alternatively, the court applied <u>Strickland</u> and found no resulting prejudice. <u>Id.</u> On postconviction appeal, the OCCA treated this claim as one asserting only that appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness, and rejected the claim under <u>Strickland</u>, finding no deficient performance and no resulting prejudice. Dkt. # 12-8, OCCA PC Order, at 4-6.

Respondent contends that petitioner is not entitled to relief on ground two because the OCCA correctly identified <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), as the clearly established federal law governing petitioner's ineffective-assistance-of-counsel claim and the OCCA's application of <u>Strickland</u> was objectively reasonable. Dkt. # 12, at 20-25. As to the unexhausted portion of ground two, respondent urges the Court to overlook the procedural defect and deny relief on the merits. <u>Id.</u> at 29-31.

Under <u>Strickland</u>, a criminal defendant must show deficient performance and resulting prejudice. 466 U.S. at 687. The OCCA rejected petitioner's Sixth Amendment claim on direct

appeal by determining that petitioner failed to show prejudice. Dkt. # 12-4, at 4-5. When a state court applies only the prejudice prong of the <u>Strickland</u> framework, a federal habeas court reviews that prong under the AEDPA's deferential standard, but reviews <u>de novo</u> whether counsel's performance was deficient. <u>Smith v. Sharp</u>, 935 F.3d 1064, 1072-73 (10th Cir. 2019). Thus, the Court must first determine, whether trial "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. If so, the Court must then determine whether the OCCA unreasonably applied the prejudice prong. <u>Porter v. McCollum</u>, 558 U.S. 30, 40 (2009).

Having reviewed the transcripts from the preliminary hearing and trial and the evidence petitioner submitted to the OCCA with his request for an evidentiary hearing, and having considered the parties arguments in the petition, response and reply, the Court finds that trial counsel did not perform deficiently and therefore agrees with respondent that petitioner fails to show that the OCCA's application of <u>Strickland</u>'s prejudice prong was objectively unreasonable.

### 1.    Failure to raise immunity under § 1289.25

Petitioner first alleges that trial counsel failed to "preserve and advocate for" his right to immunity  under § 1289.25 by failing to seek a pretrial ruling on immunity and failing to call "several witnesses" on his behalf to support his immunity claim. Dkt. # 3, at 61-62.

This allegation appears to rest on trial counsel's failure to follow the procedures for asserting immunity under § 1289.25 that were adopted by the OCCA in <u>Ramos</u>. <u>See</u> Dkt. # 12-7, at 27, 36-37 (copy of unpublished <u>Ramos</u> decision). Petitioner fails to explain how trial counsel's performance on this point was objectively unreasonable given that <u>Ramos</u> was decided over one year after petitioner's trial and given that <u>Ramos</u> expressly stated that the procedures would "govern future cases." Dkt. # 12-7, at 37. Further, as petitioner acknowledges, at the time of his trial, the

Oklahoma Uniform Jury Instructions provided a jury instruction specific to § 1289.25(D). Dkt. # 3, at 63. Thus, it was reasonable for trial counsel to present immunity as a defense at trial rather than through a pretrial motion asserting that he was absolutely immune from prosecution. And the record shows that trial counsel presented an immunity defense, sought the related jury instruction, and emphasized facts in support of that defense in closing arguments. Dkt. # 13-4, Tr. Trial vol. 3, at 82-87; Dkt. # 13-5, Tr. Trial vol. 4, at 5, 33-48. On this record, counsel did not perform deficiently with respect to asserting immunity under § 1289.25.

### 2. Failure to request a complete instruction for immunity defense.

Petitioner next contends that trial counsel failed to ensure that the jury instruction on immunity under § 1289.25, OUJI-8-15A, included language reflecting that force could be used in defense of another. Dkt. # 3, at 63. Petitioner argues the instruction was incomplete without this language because evidence presented at trial supported his assertion that he believed Travis posed a danger to Morgan when petitioner shot Travis. Dkt. # 3, at 63-64. As respondent argues, petitioner did not assert in state court that trial counsel performed deficiently with respect to this jury instruction. Dkt. # 12, at 29-31. Petitioner did, however, raise a separate issue on direct appeal to challenge the instruction itself, and the OCCA rejected that challenge. Dkt. # 12-4, at 4. The OCCA found that the "instruction given accurately stated the applicable law." Id. On habeas review, this Court is bound by the OCCA's determination that the jury instruction given accurately conveyed applicable state law. Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009). For that reason, the Court finds that trial counsel did not perform deficiently with respect to the challenged jury instruction.

### 3.    Failure to properly investigate and present expert witnesses

Next, petitioner alleges trial counsel performed deficiently (1) by failing to investigate or hire an expert in ballistics trajectory so that counsel could corroborate petitioner's statements that Travis was "barreling towards" him at the time of the shooting, Dkt. # 3, at 64-65, and (2) by failing to hire an expert witness to rebut the expert testimony of Sheriff Davis or a "scene reconstructionist [who] could have opined about the bullet trajectories and given expert testimony with relation to where each actor was standing and whether [petitioner's] (or the State's) version of events were plausible," Dkt. # 3, at 66-67.

Ordinarily, the decision to hire an expert witness is a matter of trial strategy.  Knapp v. Janecka, 337 F. App'x 766, 770 (10th Cir. 2009) (unpublished).[6]  Strategy decisions are not wholly insulated from review, but "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 689-90.  Here, it was undisputed that petitioner was standing in an elevated position on his porch steps when he shot Travis and that Travis fell to the ground on his back when he was shot.  Dkt. # 13-3, Tr. Trial vol. 2, at 46-47, 219-20; Dkt. # 13-4, Tr. Trial vol. 3, at 65.  Trial counsel elicited testimony from State witnesses to support petitioner's theory that Travis was "barreling towards" him and that petitioner feared for Taryn Morgan's and his own safety because both were in Travis's path.  Dkt. # 13-4, Tr. Trial vol. 3, at 17.  More importantly, trial counsel thoroughly exposed Sheriff Davis's lack of expertise in ballistics trajectory during cross-

---

[6]     The Court cites this unpublished decision for its persuasive value.  See FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

examination. Dkt. # 13-4, Tr. Trial vol. 3, at 72-78. And, while Deputy Greco-Lucchina testified that Travis's feet were 16 and one half feet from the third step of the porch, trial counsel elicited testimony from other officers supporting that Travis's feet were between 4-7 feet from the porch. Dkt. # 13-3, Tr. Trial vol. 2, at 176, 195-96, 214; Dkt. # 13-4, Tr. Trial vol. 3, at 27. On this record, the Court finds that counsel's decisions not to conduct an extensive bullet trajectory investigation and not to hire a ballistics expert or a "scene reconstructionist" were objectively reasonable.

### 4. Failure to present an adequate defense and call witnesses

Petitioner's fifth allegation regarding trial counsel's alleged failure to present an adequate defense appears to repackage petitioner's first four allegations (just discussed) and his seventh allegation (discussed below). Dkt. # 3, at 68-69. Accordingly, the Court will not revisit those allegations here. But it also includes an allegation that trial counsel should have called former Detective Les Ruhman as a witness to corroborate petitioner's version of events. Id. Petitioner's sixth allegation alleges that trial counsel performed deficiently by failing to call Taryn Morgan as a witness because, in his view, Morgan was "the only eyewitness who could corroborate [petitioner's] version of the events and establish facts crucial for his defense." Id. at 69-71.

Like the decision to hire an expert witness, "the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008). And trial counsel's strategic decisions are presumed reasonable. Strickland, 466 U.S. at 689. Petitioner fails to overcome this presumption as to either Ruhman or Morgan. As petitioner contends, Ruhman offered testimony at the preliminary hearing that was favorable to petitioner's defense. Dkt. # 3, at 68. Ruhman interviewed petitioner at the police station after the shooting and testified that petitioner described Travis as "barreling towards him," and that the two

men were likely four to six feet apart from each other. Dkt. # 13-1, Tr. Prelim. Hr'g, at 39, 41. Ruhman further testified that this description was consistent with evidence at the crime scene. Id. at 41. However, trial counsel was able to introduce this same testimony through other witnesses. Moreover, some of Ruhman's testimony could have been damaging. Ruhman also testified that some witnesses reported that Travis began to walk away from petitioner's driveway before either Morgan, petitioner, or both "popped off" a comment, causing Travis to turn back around and Morgan to then step off the porch to confront him. Id. at 40-41. On these facts, petitioner fails to rebut the presumption that trial counsel strategic decision not to call Ruhman was deficient.

Petitioner likewise fails to rebut the presumption as to counsel's decision not to call Morgan as a witness. In an affidavit that petitioner submitted to the OCCA with his request for an evidentiary hearing, Morgan states that she was subpoenaed to appear at trial and if called she would have testified as follows:

> Robert Travis was in a drunken rage when he came across the road, [petitioner] told him to stop but he kept barreling towards me making threats. Mr. Travis was within arms length from me, with his hand reaching towards my face, and I could hear him breathing, when the shot was fired. That is when I saw [petitioner] from the corner of my eye and realized that he had stepped off the porch and was standing next to me on my right. When Mr. Travis was shot he staggered back one step and fell.

Dkt. # 12-2, at 3. Petitioner contends the failure to call Morgan was "significantly responsible for [his] unfair trial" because Morgan's testimony could have established petitioner's frame of mind and demeanor, corroborated his version of events, supported his claims of immunity and self-defense and provided a sober account of the events. Dkt. # 3, at 70-71. Undoubtedly, Morgan was a first-hand witness to the shooting. But the evidence at trial, including petitioner's own statements, also showed that Morgan argued with Travis before the shooting, continued arguing with Travis when she sat on

the porch with petitioner, retrieved petitioner's gun before the shooting, and stepped off the porch to confront Travis as he was purportedly "barreling towards her" in a "drunken rage." And, as discussed, petitioner's statements reflected that he shot Travis without stepping down from the porch. Had Morgan testified that petitioner also stepped down from the porch and stood beside her ready to confront Travis, petitioner's self-defense argument may have been less credible. Moreover, notably absent from Morgan's affidavit and from the arguments in the habeas petition is any indication that trial counsel failed to interview Morgan before deciding not to call her as a witness. Under these circumstances, the Court finds it reasonable to presume that counsel made an informed decision not to call Morgan as a witness. Further, it is clear from the record that the OCCA considered Morgan's affidavit, along with the other affidavits petitioner submitted, when it found no "clear and convincing evidence" to warrant an evidentiary hearing on petitioner's Sixth Amendment claim. Dkt. # 12-4, OCCA Op., at 5; see Lott v. Trammell, 705 F.3d 1167, 1213 (10th Cir. 2013) (noting that OCCA's decision denying a request for evidentiary hearing on a claim of ineffective assistance of counsel is entitled to deference under § 2254(d)). The Court thus finds that petitioner has not shown counsel performed deficiently as to the failure to call either Ruhman or Morgan as witnesses.

### 5. Advice to reject plea offers

Finally, petitioner contends trial counsel's performance "fell below an objective standard of reasonableness" because counsel advised him to reject plea offers and proceed to trial. Dkt. # 3, at 71-72. For this particular allegation, petitioner cites Lafler v. Cooper, 566 U.S. 156 (2012). Lafler refined the prejudice prong of the Strickland standard in the context of plea negotiations that involve

rejection of a plea offer on advice of counsel, holding that in those circumstances a defendant asserting a Sixth Amendment claim

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 566 U.S. at 164. However, as respondent points out, the parties in Lafler conceded that trial counsel in that case performed deficiently in advising the defendant to reject the plea offer. Id. at 174. Thus, even under Lafler, petitioner must show deficient performance.

Petitioner alleges trial counsel first communicated a plea offer of 25 years as a split-sentence, with 12 years in custody and 13 years suspended, and advised him to reject that offer. Id. at 72; Dkt. # 12-2, at 6 (petitioner's affidavit). Counsel then communicated an offer for a 10-year sentence with petitioner free to select the amount of the split sentence. Dkt. # 3, at 72; Dkt. #12-2, at 6. Counsel advised petitioner "not to take more than four (4) years on probation." Dkt. # 12-2, at 6. Petitioner counter-offered with a proposed sentence of two years in and eight years out, but the State rejected that offer and plea negotiations ended. Id.; Dkt. # 3, at 72. According to petitioner, trial counsel advised him to reject plea offers because there was "no way 'twelve people will convict you of murder.'" Dkt. # 12-2, at 6. At the beginning of petitioner's trial, the trial court inquired as to whether the parties had engaged in plea negotiations. Dkt. # 13-2, Tr. Trial vol. 1, at 293-94. The State advised offers were made, defense counsel advised offers were communicated to petitioner, and petitioner advised that he was satisfied that his attorneys advised him about the plea offers. Id.

The Court cannot discern from these facts that trial counsel performed deficiently in advising petitioner to reject the State's plea offers. Even assuming the truth of petitioner's statement that counsel advised him the jury would not convict him of murder, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." Lafler, 566 U.S. at 174. Because the only discernible basis for petitioner's argument is that trial counsel incorrectly predicted the outcome of his trial when he advised petitioner to reject the plea offers, he fails to demonstrate deficient performance relating to counsel's advice during plea negotiations.

### 6. Conclusion

Rather than decide that trial counsel performed deficiently, the OCCA assumed as much and determined that there was no reasonable probability that, but for the alleged errors, the outcome of trial would have been different. Dkt. # 12-4, OCCA Op., at 4. Based on the foregoing analysis, the Court concludes that counsel's performance was not deficient. Thus, the Court further concludes that the OCCA's determination that petitioner suffered no resulting prejudice is objectively reasonable. The Court therefore denies habeas relief as to ground two.

### C. Ground three: right to fair trial

In ground three, Petitioner alleges that six trial errors deprived him of his right to a fair trial, as provided in the Sixth and Fourteenth Amendments. Dkt. # 3, at 73-89. Specifically, he contends: (1) the trial court failed to admonish the jury regarding irrelevant and prejudicial comments made by State's witness Crystal Topaum, (2) he was deprived of his Sixth Amendment right to confront the witnesses against him when the State failed to call former detective Les Ruhman as a witness at trial, (3) the trial court impermissibly allowed expert opinion testimony by Sheriff John Davis regarding bullet trajectory, (4) the trial court failed to include a crucial jury instruction regarding

exculpatory statements by petitioner, (5) the trial court failed to include the full Stand-Your-Ground jury instruction regarding danger to Taryn Morgan, and (6) the accumulation of errors during the trial amounted to an unfair trial in violation of the Sixth and Fourteenth Amendment. Dkt. # 3, at 73-89.

Petitioner raised each alleged trial error as a separate claim on direct appeal, and the OCCA rejected each claim. Dkt. # 12-4, OCCA Op., at 3-5. But, with the exception of his confrontation-clause claim, petitioner did not present each claim to the OCCA as one implicating his federal constitutional rights. Instead, he framed two allegedly erroneous evidentiary rulings as state law errors, framed two alleged jury-instruction errors as state law errors and included undeveloped references to his right to a fair trial at the end of each argument section, and asked the OCCA to consider the cumulative effect of errors under state law. Dkt. #12-1, at 18-19 (failure to admonish jury), 23-29 (expert opinion testimony), 29-31 (omission of exculpatory-statements instruction "clearly prejudiced the defendant's right to a fair trial"), 31-34 (failure to give complete stand-your-ground instruction violated fundamental right to fair trial under Fifth, Sixth and Fourteenth Amendment), 42-43 (cumulative-error). As a result, to the extent petitioner merely reasserts his same state-law errors in his habeas petition, the Court agrees with respondent that he is not entitled to federal habeas relief. Wilson, 562 U.S. at 5. Nevertheless, the Court will consider whether the alleged evidentiary and instructional errors "so infused the trial with unfairness as to deny due process of law." Thornburg v. Mullin, 422 F.3d 1113, 1124 (10th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 75 (1991)).

### 1.      Failure to admonish the jury

Petitioner claims he was denied a fair trial because the trial court failed to admonish the jury after Crystal Topaum testified that petitioner spoke to her more than 24 hours before the shooting

and told her "he had been mad and angry that day, and he was looking to start fights to see if someone would try to fight him." Dkt. # 13-3, Tr. Trial vol. 2, at 134, 138; Dkt. # 3, at 73-75. The trial court sustained defense counsel's objection to this testimony as irrelevant, but declined to admonish the jury, noting that the evidence may become relevant later if petitioner presented certain evidence during his case-in-chief. Dkt. # 13-3, Tr. Trial vol. 2, at 138-43. Defense counsel ultimately agreed with the trial court's suggestion that admonishing the jury may simply highlight the prejudicial testimony. Id. at 143.

On direct appeal, the OCCA concluded that the trial court should have admonished the jury because this evidence was irrelevant when introduced, but further concluded that petitioner suffered no prejudice "because the evidence became relevant after the defense presented its case-in-chief and would therefore have been admissible in rebuttal." Dkt. # 12-4, OCCA Op., at 3. The Court agrees with petitioner that the OCCA's reasoning on this point is flawed because petitioner did not present evidence during his case-in-chief that made Topaum's prejudicial statement admissible in rebuttal. Dkt. # 3, at 75. But the Court also agrees with respondent that, in the context of the entire trial, neither Topaum's statement nor the trial court's failure to admonish the jury to disregard it, deprived petitioner of his fundamental right to a fair trial. Topaum was the fifth of thirteen state witnesses over the course of the three-day jury trial, and the remainder of her testimony was largely consistent with other witnesses who were present for the events leading up to the shooting and the shooting itself. Dkt. # 13-3, Tr. Trial vol. 2, at 134-49. Petitioner thus fails to demonstrate a due process violation arising from the admission of Topaum's testimony.

## 2. Confrontation clause violation

Petitioner claims he was deprived of his Sixth Amendment right to confront the witnesses against him because the State failed to call former detective Les Ruhman to testify at trial. Dkt. # 3, at 76-79. Ruhman was the detective who interviewed petitioner following his arrest, and he testified about the interview and investigation at the preliminary hearing. Dkt. # 13-1, Tr. Prelim. Hr'g, at 39. At the time of petitioner's trial, Ruhman was no longer a detective, so the State called Sheriff John Davis to testify about the shooting investigation and petitioner's post-arrest interview. Dkt. # 13-4, Tr. Trial vol. 3, 47-49. Petitioner argues that the substitution of Davis for Ruhman violated his Sixth Amendment right to confrontation, as interpreted in Crawford v. Washington, 541 U.S. 36 (2004), and Bullcoming v. New Mexico, 564 U.S. 647 (2011). Dkt. # 3, at 76-77.

Applying Crawford, the OCCA rejected this claim, concluding that petitioner "was not denied his Sixth Amendment right to Confrontation by the State's failure to call at trial a witness it had called to testify at preliminary hearing. This witness testified at preliminary hearing and was subject to cross examination." Dkt. # 12-4, OCCA Op., at 3. In his petition, petitioner acknowledges that the OCCA "denied the request for relief citing that because Detective Ruhman was available for Cross-examination at preliminary hearing, the confrontation clause was satisfied." Dkt. # 3, at 79. But beyond this statement, nothing in the petition or petitioner's reply brief remotely suggests, much less demonstrates, that the OCCA's decision resulted from an unreasonable application of Crawford or was based on an unreasonable determination of the facts. Dkt. # 3, at 76-79; Dkt. # 17, generally. The Court thus concludes that § 2254(d) bars relief on this claim.

### 3.    Admission of expert testimony

Next, petitioner claims he was denied a fair trial because the trial court allowed Sheriff Davis to testify as an expert, over petitioner's objection, and to offer his opinions regarding bullet trajectory. Dkt. # 3, at 79-83. Petitioner also argues that the trial court allowed Davis to offer his conclusion that he did not see, from the evidence, "a straight barreling person being hit where the deceased was hit," thereby invading the province of the jury. Id. at 81. Applying state law, the OCCA rejected this claim, stating,

> The trial court did not abuse its discretion in finding that Sheriff John Davis was qualified by his training and experience to give an opinion regarding the trajectory of the bullet that killed Travis and other aspects of the crime scene. Warner v. State, 2006 OK CR 40, ¶ 22, 144 P.3d 838, 860; 12 O.S. 2011, § 2704. Furthermore, Davis' testimony was not an improper opinion telling the jury what result to reach but was based upon his qualifications and experience and assisted the trier of fact to understand the evidence. There was no plain error in the admission of this testimony.

Dkt. # 12-4, OCCA Op., at 3-4.

Petitioner contends that the OCCA "applied the wrong standard of review . . . (plain error instead of abuse of discretion)" and that its opinion "was an unreasonable determination of the facts." Dkt. # 3, at 82-83. He further contends that the OCCA's "opinion merely recited the basic idea that Davis had enough training and qualifications to give an opinion regarding trajectory without addressing the number of concerns raised during trial and appeal." Id. at 83.

Petitioner's argument on this point is unclear. Nevertheless, the Court's review of this allegedly erroneous evidentiary ruling is limited to determining whether the error "so infused the trial with unfairness as to deny due process of law." Thornburg, 422 F.3d at 1124. Having reviewed the trial transcripts in their entirety, the Court finds that the admission of Davis's expert testimony and his conclusion that the evidence did not comport with Travis "barreling towards" petitioner did not

so infect the trial as to deny petitioner due process. As previously discussed, trial counsel vigorously cross-examined Davis regarding his lack of bullet-trajectory training, eliciting testimony that Davis had only 40 to 60 hours of training in this subject, that he had not written a report in this specific case to document his findings and conclusions, and that he had never before testified as an expert on this subject. Dkt. # 13-4, Tr. Trial vol. 3, at 72-78. On this record, petitioner fails to demonstrate a denial of his fundamental right to a fair trial.

### 4.    Alleged jury instruction errors

Next, petitioner claims he was deprived of a fair trial because (1) the trial court failed to give a requested jury instruction regarding exculpatory statements and (2) the trial court failed to give a complete instruction on immunity under § 1289.25(D). Dkt. # 3, at 83-86. The OCCA rejected both claims. First, the OCCA determined that the evidence did not warrant giving an instruction on exculpatory statements. Dkt. # 12-4, OCCA Op., at 4. Second, the OCCA found that the immunity "instruction given accurately stated the applicable law." Id.

Federal habeas courts have a limited role in evaluating jury instructions. Relief is only available if instructional errors "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense." Shafer v. Stratton, 906 F.2d 506, 508 (10th Cir. 1990) (quoting Brinlee v. Crisp, 608 F.2d 839, 854 (10th Cir. 1979)). Petitioner's burden under this test is "greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). On habeas review, "[t]he question is not whether the instruction[s] [were] undesirable, erroneous, or even universally condemned, but whether the instruction[s] so infected the trial that the resulting conviction violates due process." Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) (quoting Henderson, 431 U.S. at 154). Further, where

the petitioner relies on the omission of instructions rather than the provision of an erroneous instruction, the burden is especially heightened. <u>Tyler v. Nelson</u>, 163 F.3d 1222, 1227 (10th Cir. 1999). "[A]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." <u>Id.</u> (quoting <u>Maes</u>, 46 F.3d at 984).

Here, petitioner complains of an omitted instruction that the OCCA concluded was not warranted by the evidence and an incomplete instruction that the OCCA found accurately reflected applicable state law. Having reviewed the instructions as a whole and having considered the entire trial record, the Court agrees with respondent that neither alleged instructional error rendered petitioner's trial fundamentally unfair.

### 5. Cumulative error

Finally, petitioner claims the cumulative effect of trial errors deprived him of a fair trial. Dkt. # 3, at 87-88. "[I]n the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." <u>Alverson v. Workman</u>, 595 F.3d 1142, 1162 (10th Cir. 2010) (brackets and internal quotation marks omitted) (quoting <u>Brown v. Sirmons</u>, 515 F.3d 1072, 1097 (10th Cir. 2008)). But a cumulative-error analysis is warranted "only if there are at least two errors." <u>Lott</u>, 705 F.3d at 1223 (quoting <u>Hooks v. Workman</u>, 689 F.3d 1148, 1194-95 (10th Cir. 2012)).

Because the Court finds no constitutional errors, petitioner is not entitled to habeas relief on his cumulative-error claim.

### 6. Conclusion

The Court concludes that the trial errors alleged, whether considered individually or cumulatively, did not deprive petitioner of a fundamentally fair trial. The Court further concludes that § 2254(d) bars relief as to petitioner's confrontation-clause claim.

### IV. Conclusion

Based on the foregoing analysis, the Court concludes that petitioner is not entitled to federal habeas relief. The Court therefore denies his petition for writ of habeas corpus. In addition, because the Court finds that reasonable jurists would not debate the correctness of this Court's assessment of his constitutional claims, or its assessment that certain portions of his claims allege only errors of state law, the Court concludes that no certificate of appealability should issue. Slack v. McDaniel, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c)(1); Rule 11, Rules Governing Section 2254 Cases in the United States District Courts.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note the substitution of Scott Crow, in place of Joe Allbaugh, as party respondent.

2. The petition for writ of habeas corpus (Dkt. # 3) is **denied**.

3. Petitioner's request for an evidentiary hearing is **denied**.

4. A certificate of appealability is **denied**.

5. A separate judgment shall be entered in this matter.

**DATED** this 1st day of April, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE